Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4952 | **DATE** | 6/1/2004 |
| **CASE TITLE** | Trst Chgo P&D Pen vs. LaCosta, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached memorandum opinion, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. In addition, plaintiff's motion to strike is denied as moot. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 0 2 2004 | |
| ✓ | Docketing to mail notices. Judge's staff distributed Memorandum Opinion. | | date docketed | Document Number |
| | Mail AO 450 form. | | GMA | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | 50 |
| | MW6 courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS PENSION, HEALTH, AND WELFARE AND DEFERRED SAVINGS PLAN TRUST FUNDS | ) ) ) ) ) | |
| Plaintiff, | ) | No. 01 C 4952 |
| | ) ) | |
| v. | ) ) | **DOCKETED** |
| LACOSTA, Inc., an Illinois corporation | ) ) ) | JUN 0 2 2004 |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before this court on Plaintiff Trustees of the Chicago Painters and Decorators Pension, Health and Welfare, and Deferred Savings Plan Trust Funds', ("Trustees") and Defendant LaCosta, Inc.'s ("LaCosta") cross-motions for summary judgment. In addition, Trustees have filed a motion to strike a portion of Karla Mota Johnson's Affidavit. For the reasons stated below, we grant LaCosta's motion for summary judgment and deny Trustees' motion for summary judgment.

1

50

Additionally, Trustees' motion to strike is denied as moot.

## BACKGROUND

The Chicago Painting and Decorating Contractors' Association ("Employer Association") is a trade association of painting and decorating contractors. Plaintiff is the trustee of the Chicago Painters and Decorators Pension, Health and Welfare, and Deferred Savings Plan trust funds. These trust funds are employee benefit trusts to which certain contributions are made pursuant to collective bargaining agreements. LaCosta is an Illinois Corporation in the business of providing painting, janitorial, and supplemental labor services.

Trustees allege that LaCosta is a member of the Employer Association and as a member has failed to submit to an audit or contribute to the trust funds pursuant to the Employer Association collective bargaining agreement ("CBA") between the Employer Association and the Painters' District Council No. 14 ("Union"). LaCosta contends that it has not entered into the CBA and has no obligation to submit to an audit or contribute to the trust funds. LaCosta further contends that it merely responded to a solicitation by the Employer Association for free membership and filled out a one page form application entitled "Free 2001 PDCA & FCA Membership Application" ("Association Membership Application").

## LEGAL STANDARD

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most

3

favorable to the non-moving party, and draw all reasonable inferences that favor the

non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212

F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Both cross motions for summary judgment concern the interpretaion of

whether or not LaCosta is bound by the CBA. Trustees' motion for summary

judgment maintains that LaCosta intended to be bound by the CBA. LaCosta's

motion for summary judgment maintains that it did not intend to be bound by the

CBA.

In discerning whether an employer is bound "through its involvement with a

multi-employer association, to collective bargaining agreements negotiated between

the association and a union", - as is the case in this matter - a court must consider

agency principles and in addition determine whether the employer "manifested an

unequivocal intention" to be bound by a collective bargaining agreement. *Moriarty*

*v. Glueckert*, 155 F.3d 859, 865-66 (7th Cir. 1998).

Trustees contend that on January 3, 2001 LaCosta expressly delegated

authority to bind itself to the CBA when LaCosta's President, Kara Mota Johnson,

signed an application for membership with the Employer Association. LaCosta

contends that when it's President signed the application for free membership with

the Employer Association it did not intend to be bound by the CBA.

4

In *Moriarty v. Pepper*, 256 F.3d 554, 558 (7th Cir. 2001), an action very similar to this case, the Seventh Circuit examined whether the defendant, Pepper, expressly authorized an employer association to bargain on his behalf simply because he signed the employer association's membership application. In that case, the Seventh Circuit noted that the application Pepper signed did not "specifically state" that he would be delegating his bargaining rights to the association. *Pepper*, 256 F.3d at 558. After reviewing the employer association's constitution and application for membership, the Seventh Circuit found that Pepper's signing of the application "did not reveal an express intention" on Pepper's part to be bound by the employer association's collective bargaining activities. *Id.*

In this case, Trustees argue that the Association Membership Application LaCosta signed unequivocally states that the applicant is bound by the CBA. The last sentence of the Association Membership Application reads as follows:

> I have read, understand, and agree to abide by the Constitution and By-Laws of the Chicago Council/PDCA and the current Labor-Management Agreement between Painters' District Council No. 14 and PDCA(copies available on request)

Pl.'s Ex. 3.

The court notes that, the Association Membership Application that LaCosta signed did not inform LaCosta that by signing the application it would be joining a particular class of membership in the Employer Association. It is undisputed that there are actually three classes of membership: Active Membership, Associate Membership, and Honorary Membership in the Employer Association. Pl.'s Rule 56.1 ¶44; Pl.'s Ex. 7 § 3.01. Furthermore, the Constitution and By-Laws of the

5

Employer Association contains separate provisions addressing and distinguishing the different forms prescribed for applications for Active Membership and applications for Associate Membership. Pl.'s Ex. 7 § 3.02(b), § 3.04(b). In addition, the Constitution and By-Laws of the Employer Association provides that only "Active Members" are bound by the CBA. Pl.'s Ex. 7 §10.01(a).

The Association Membership Application LaCosta signed did not inform LaCosta of the different types of membership in the Employer Association or that by signing the application it was becoming an "Active Member" of the Employer Association subject to the CBA. The one page free membership application form that LaCosta signed fails to make it clear to LaCosta whether the form is an application for Active Membership or Associate Membership. Pl.'s Ex. 7 § 3.02(b), § 3.04(b). LaCosta was not provided with a copy of the Constitution and By-Laws of the Employer Association when LaCosta's President signed the Association Membership Application. As a matter of fact, LaCosta has never been provided with a copy of the Constitution and By-Laws of the Employer Association. As to the Employer Association's failure in providing LaCosta with a copy of its Constitution and By-Laws, the words "copies available on request" appearing in parenthesis on the bottom of the one page free membership form is insufficient and does not provide the employer with clear and accurate information to make a sound decision on an important matter in the nature of a binding collective bargaining agreement. The manner in which the Employer Association solicited LaCosta to free

membership in the Employer Association with the ensuing consequence of being bound by a collective bargaining agreement borders on deception. LaCosta could not have expressly intended to be bound by the CBA because the Association Membership Application was deficient in that it did not inform the applicant, LaCosta, that it was applying to become an "Active Member" of the Employer Association and hence bound by the CBA nor did it provide LaCosta with sufficient information to enter into a binding collective bargaining agrrement.

Therefore, Trustees have failed to establish that LaCosta's signing of the Employer Association Application revealed an expressed intention to be bound by the CBA.

## UNEQUIVOCAL INTENTION

In *Glueckert,* the Seventh Circuit adopted a test that is used to determine whether an employer member is bound by a collective bargaining agreement between the employer association and the union. 155 F.3d at 865(citing *Trustees of the UIU Heath and Welfare Fund v. New York Flame Proofing Co.*, 828 F.2d. 79 (2nd Cir. 1987). The test set forth in *Glueckert* is instructive in deciding whether the employer member "manifested an unequivocal intention to be bound" by the employer association's collective bargaining agreement. *Id*. The *Glueckert* factors include: (1) whether negotiation of collective bargaining agreements was a principal or sole activity in which the association engaged; (2) whether it was universally known that the custom of the association was to bind all members to the

7

association's collective bargaining agreements; (3) whether the individual member participated in the collective bargaining agreements; (4) whether the individual member manifested an intent to pursue an individual course of action regarding labor relations; (5) whether the employer conducted itself as if it were bound to the collective bargaining agreement. *Id.* at 866-67.

In support of the first *Glueckert* factor, Trustees maintain that the principal or sole activity of the Employer Association is to negotiate collective bargaining agreements with Labor Unions on behalf of its contractor members. However, the Employer Association has submitted exhibits in which the Employer Association advertises that it offers to its members (1) Reduced Bond Requirement Offers; (2) Training Programs; (3) Tech Information; (4) Health & Safety Programs; (5) Professional Business Management Materials; (6) Networking Opportunities With Fellow Contractors and Associates; and (7) Employer Association Technical Assistance. Pl.'s Ex. 8. Therefore, the evidence does not sufficiently establish that the negotiation of collective bargaining agreements was a principal or sole activity in which the Employer Association in which was engaged.

In support of the second *Glueckert* factor, Trustees contend that the Employer Association has been incorporated since 1934 and that since that time the Constitution and By-Laws of the Employer Association have made it universally known that it is the custom of the Employer Association to bind all its members to its collective bargaining agreements. However, it is undisputed that only Active

8

Members of the Employer Association, and not all members are bound by the CBA. Therefore, the evidence fails to establish that it was universally known that the custom of the Employer Association was to bind all members of the Employer Association to the CBA.

With respect to the third *Glueckert* factor, Trustees contend that LaCosta's signature on the Application should be considered as indicative of participating in some form of collective bargaining agreement. Trustees also state that an introductory letter and a copy of the CBA that it sent to LaCosta also demonstrates participation in the CBA. Trustees' assertions are without merit. LaCosta's signing of the Association Membership Application and the subsequent receipt of an introductory letter and copy of the CBA does not constitute participation in a collective bargaining agreement. Trustees admit that LaCosta had no involvement in the collective bargaining process between the Employer Association and the Union. Pl.'s Resp. to Def.'s Rule 56.1 ¶'s 72, 73. Therefore, the evidence fails to establish that LaCosta participated in any collective bargaining agreement.

With respect to the fourth *Glueckert* factor, LaCosta has maintained - and Trustees do not dispute - that during the period Trustees allege LaCosta was bound by the CBA, LaCosta provided its employees their own independent employee benefits and continued to make contributions to the fund of another employee association completely separate and not associated with Employer Association. Therefore, it is clear that LaCosta manifested an intent to pursue its own individual

course of action regarding labor relations.

Finally, with respect to the fifth *Glueckert* factor, Trustees contend that in the summer of 2001 they received two reports for fringe benefits relating to LaCosta in their attempt to show that LaCosta conducted itself as if it were bound by the CBA. LaCosta contends that it did not submit any fringe benefit reports to the Trustees and that its accountant, Kathleen Eremo ("Eremo"), who performed accounting for both LaCosta and another company Bel-Rae, accidently forwarded fringe benefit reports related to LaCosta to the Trustees. The record reflects that a company named Bel-Rae ("Bel-Rae") is a signatory to the CBA and that Bel-Rae's accountant, Eremo, regularly submitted fringe benefit reports relating to Bel-Rae to the Trustees. The record further reflects that during the summer of 2001 the Trustees had not received fringe benefit reports relating to Bel-Rae and that Eremo who was performing accounting services for both LaCosta and Bel-Rae had inadvertently forwarded LaCosta's fringe benefit reports to the Trustees when in fact Eremo should have forwarded the fringe benefit reports relating to Bel-Rae to the Trustees. Trustees have not disputed LaCosta's account of events described above and furthermore the record reflects that the same counsel who brought suit against LaCosta in the summer of 2001 on behalf of the Trustees were the same counsel who sent letters in August 2001 to Bel-Rae inquiring as to Bel-Rae's failure to submit the monthly fringe benefit reports for the summer of 2001. Trustees were fully aware of the inadvertent submission of the fringe benefit reports by the accountant, Eremo, and

10

there attempt at this stage of the proceedings to capitalize on an error in order for Trustees to establish that LaCosta conducted itself as if it was bound to the CBA is not supported by the record and is disingenuous.

The evidence submitted by both parties fails to establish that LaCosta conducted itself as if it were bound by the CBA. Therefore, under the *Glueckert* test and based on the above analysis we find that LaCosta is not bound by the CBA.

The court further notes that the Association Membership Application was both deficient and misleading. The form that the Employer Association lured LaCosta into signing is predominantly a solicitation for a free membership in the Employer Association and does not provide the individual employer with sufficient information to bind such employer to a collective bargaining agreement. A membership by an employer in an association with resulting consequences to be bound by a collective bargaining agreement should be based upon mutual trust and a clear understanding of the rights and obligations of all the parties and not be based upon vagueness, confusion, or trickery.

We find that LaCosta did not expressly or unequivocally manifest an intent to be bound by the CBA and that there is no genuine issue of any material fact. Furthermore, we find that no reasonable trier of fact could conclude that LaCosta is bound by the CBA.

## CONCLUSION

Therefore, based upon foregoing, LaCosta's motion for summary judgment is granted and Trustees' motion for summary judgment is denied. In addition, Trustees' motion to strike is denied as moot.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 1, 2004

12